Hector GURROLA, Appellant,

v.

The STATE of Texas, Appellee.

No. 0459–93.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 9, 1994.

Rehearing Denied May 11, 1994.

Werner R. Voight, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the Court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of possession of cocaine. Punishment, enhanced by a prior felony conviction, was assessed at ten years in the Texas Department of Corrections (now the Texas Department of Criminal Justice, Institutional Division). On appeal, appellant's conviction was affirmed by the Fourteenth Court of Appeals in *Gurrola v. State,*

852 S.W.2d 651 (Tex.App.—Houston [14th Dist.]. We granted appellant's petition for discretionary review in order to determine whether the Court of Appeals erred in holding that the trial court did not err in denying appellant's motion to suppress.[1] We reverse the judgment of the Court of Appeals.

A brief review of the facts surrounding the detention and subsequent search of appellant is appropriate.

Late one afternoon, Harris County Deputy Ronald Butler was patrolling a subdivision of Cloverleaf in a patrol vehicle. An unknown man walking a dog approached Deputy Butler and reported some type of disturbance occurring at the Bonham Street Apartments. Deputy Butler knew the apartment complex to be an unsafe location that had incurred several complaints of disturbances from area residents. Deputy Butler drove over to the parking lot of the complex where he saw three men and a woman engaged in what appeared to be an argument. The deputy approached the individuals to find out "what was going on," but as he did so, they all began to leave.

After the individuals began to disperse, Deputy Butler told them all to come back. They were ordered to place their hands on a parked vehicle and a pat-down search of appellant and the others ensued. This initial search of appellant yielded a .38–caliber handgun. A further invasive search produced a packet of a white powder substance that was later found to be cocaine. Appellant was arrested and charged with possession of a controlled substance. Appellant filed a motion to suppress the gun and the cocaine, alleging that they were illegally seized from his person. Jorge Rodriguez, one of the four detainees, and appellant both testified at the suppression hearing that there was no argument or dispute. Their testimony indicated that the four individuals were discussing a dance to be held later that evening.

Appellant contends that the initial detention of the four individuals was illegal. Appellant further contends that the search of his person was not justified by reasonable suspicion or concern for the safety of the officer. Appellant argues that the evidence

---

1. *See* Tex.R.App.P. 200(c)(5).

discovered as a result of this detention and the subsequent search of his person should therefore have been suppressed. Tex.Code Crim.Proc.Ann. Art. 38.23(a) (Vernon Supp. 1993).

A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App.1987). Although police officers may approach and question an individual, the individual may refuse to answer any questions put to him and may go on his way. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). To justify a temporary detention, the officer must have specific articulable facts which, in light of his experience and general knowledge taken, together with rational inferences from those facts, would reasonably warrant the intrusion on the citizen. *Ramirez v. State,* 672 S.W.2d 480, 482 (Tex.Crim.App. 1984); *Hoag, supra,* at 380. Even in the absence of bad faith, detention based on a mere hunch is illegal. There must be a "reasonable suspicion" by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *Schwartz v. State,* 635 S.W.2d 545, 547 (Tex.Crim.App.1982); *Hoag, supra,* at 380. Where the initial detention is unlawful, any evidence seized subsequent to such a detention is inadmissible. *Schwartz, supra; see also Hoag, supra,* at 381; *see* Article 38.23, V.A.C.C.P.

The Court of Appeals justified the stop and temporary detention of appellant on four grounds. First, the Court of Appeals held that Deputy Butler witnessed a public altercation, which they held to be an out of the ordinary occurrence. Second, the Court of Appeals held that Deputy Butler saw appellant participating in the disturbance. Third, the Court of Appeals held that the disturbance plausibly threatened a breach of the peace. Finally, the Court ruled that the immediate dispersal of the individuals upon the arrival of the police was not conduct as consistent with innocent activity as with illegal activity. However, upon review of the record in this case, in light of applicable case

law, it is apparent that the Court of Appeals has mischaracterized the evidence and extended the law beyond its intended scope.

The testimony of Deputy Butler at the suppression hearing revealed that the four detainees were engaged in no more than a heated discussion when he arrived in the parking lot where they stood. His own police report characterized the exchange as a "disturbance." Assuming it was an argument, this clearly does not amount to an "altercation", as the Court of Appeals characterized it. While it is true that appellant was part of this disturbance, four individuals arguing in a residential parking lot in the late afternoon is not "out of the ordinary." Finally, the individuals' actions in immediately ceasing their discussion upon the sight of the police were not only their constitutional right, but were also evidence that the discussion was voluntarily terminated. Thus, any threat of a breach of the peace had dissipated before the deputy detained and searched the individuals.

As *Schwartz, Hoag,* and a host of other cases make clear, an officer's reasonable suspicion must involve the occurrence of past or present activity out of the ordinary that is related to crime. Deputy Butler witnessed four people having an aggressive conversation which he assumed to be an argument. Before he could determine what was going on, the individuals all walked away.

The Court of Appeals applied the totality of the circumstances test, as set out in *Gearing v. State,* 685 S.W.2d 326, 327–28 (Tex. Crim.App.1985), to all of the facts known to Deputy Butler in upholding the trial court's admission of the evidence against appellant. These factors need to be individually addressed.

As we have already stated, four individuals engaged in an argument in a parking lot in the late afternoon is not so out of the ordinary as to give rise to the belief that appellant was engaged in criminal activity. *See Hawkins v. State,* 758 S.W.2d 255, 260 (Tex.Crim.App.1988). (No facts indicate anything suspicious about defendant's decision not to be questioned by the police but instead to proceed on his way). There is nothing unlawful about Appellant's walking away when the Deputy attempted to question him.

*Hawkins,* at 260. In fact, appellant had a constitutional right to walk away and not answer any questions put to him without such action creating reasonable suspicion in the mind of the officer that criminal activity was afoot. *Florida v. Royer, supra.*

The Court of Appeals combined the circumstances set out above with several other factors. The first factor that the court considered was that Deputy Butler received an uncorroborated complaint from an unknown individual. The court correctly recognized that such information received from an individual of unknown reliability cannot alone be the basis for an investigation infringing on an individual's constitutional rights. *Gurrola,* 852 S.W.2d at 653. However, unlike some of the cases relied upon by the Court of Appeals, this individual did not even inform the deputy that criminal activity had occurred or was occurring.

■ The second factor the Court of Appeals mentioned was the high-crime reputation of the area where the detainees were seen. That alone may not serve as the basis for an investigative stop. *Amorella v. State,* 554 S.W.2d 700, 701 (Tex.Crim.App.1977); *Gurrola,* at 653. Furthermore, a residential parking lot in the late afternoon does not give rise to the same suspicions as does an empty department store parking lot at 1:30 a.m. *Cf. Amorella,* at 701.

■ The third factor that the Court of Appeals recognized was the "flight" from the police officer. Mere flight alone does not justify an investigative detention, but this description of appellant's actions by the Court of Appeals is also a mischaracterization of the evidence. As an individual has the right to refuse to answer the questions of a law enforcement officer and walk away unless the officer has reasonable suspicion of criminal activity, appellant's action in walking away cannot be characterized as flight. Additionally, it appears that appellant's action of walking away is exactly what caused Deputy Butler to be suspicious. If such action gives rise to reasonable suspicion, then the right of American citizens to refuse to answer questions by police officers who have no reasonable suspicion, recognized by the United States Supreme Court in *Florida v. Royer,* is a hollow right.

In reaching its decision, the Court of Appeals relied on several cases decided by this Court. All of those cases are distinguishable from the case at bar.

In *Amorella,* 554 S.W.2d at 703, this Court found that an investigatory stop was justified where a police officer observed a vehicle with the lights on and motor running in a department store parking lot at 1:30 a.m. The area was known to the police officer to be a "high crime area." The vehicle contained two individuals and the third was standing outside of the vehicle next to the open trunk. Although the entire parking lot was empty, the vehicle was parked immediately beside the store. When the man outside the vehicle noticed the officer, he got into the vehicle and began to drive off. The officer then stopped the vehicle. This Court held that the investigative stop was justified, as those facts gave rise to a reasonable suspicion of criminal activity. *Amorella,* at 702.

■ The case at bar differs significantly from *Amorella.* The action of leaving a car's motor running in a desolate parking lot next to a department store with the trunk open at 1:30 in the morning is suspicious. Similarly, a discussion late in the afternoon in the parking lot of an apartment complex gives rise to no reasonable suspicion of criminal activity.

The Court of Appeals also relied on *Schwartz v. State,* 635 S.W.2d 545 (Tex.Crim. App.1982) for the proposition that the "altercation" and immediate dispersal of the participants when they sighted the police was not conduct as consistent with innocent activity as with illegal activity. In *Schwartz,* a police officer, while looking for juveniles with alcoholic beverages, spotted a pickup truck in an alley behind a gasoline station. The officer observed the defendant and his girlfriend lean towards the middle of the truck. This aroused the officer's suspicion that they were juveniles with alcoholic beverages, and so he pulled the truck over. It was revealed at trial that the officer had been responding to a complaint about a group of juveniles aged ten to thirteen years old. There was no description of a truck in the complaint. Further, the truck observed was located in an area of the gas station that contained vacuum cleaners and car wash facilities. These stalls were operable at the time of the stop. This

Court held the stop was illegal and the evidence obtained as a result of the stop was inadmissible, based on the fact that the defendant did not fit the description of the juveniles complained of, the officer witnessed no traffic violations or other crimes, and the defendant's conduct was as consistent with innocent activity as with criminal activity.

The Court of Appeals attempted to distinguish the facts of appellant's case from the facts in *Schwartz*. However, the difference between *Schwartz* and the case at bar is not significant enough to raise a belief that appellant's actions were suspicious. In fact, the *Schwartz* holding supports appellant's contention in this case. Standing in a residential parking lot in the late afternoon having an aggressive conversation is an entirely innocent activity. As stated above, the act of walking away from a police officer under completely innocent conditions cannot be held to raise the level of suspicion so as to justify an investigative search. Appellant's original act of having an aggressive conversation in a parking lot is no more suspicious than leaning towards the middle of a pickup truck while parked at a gas station's car wash facility.

The Court of Appeals cited *Ramirez v. State*, 672 S.W.2d 480 (Tex.Crim.App.1984) on several occasions in support of the law on reasonable suspicion. *Ramirez* was also cited as justifying the deputy's pat-down search of the four detainees. We believe that the Court of Appeals' reliance on *Ramirez* is misplaced. In *Ramirez*, a patrol officer was given an exact description of the defendant, and was informed of his whereabouts as well as his possession of a gun while patronizing a local bar. The officer proceeded directly to the bar and recognized the individual matching the description given to him. When the officer approached the individual, he noticed a large bulge in his right pocket. Having been informed that this person had a gun, a crime in itself, and noticing the bulge in the defendant's pocket, the officer had sufficient facts to justify a limited search for weapons.

*Ramirez* is particularly distinguishable from appellant's case. Unlike in *Ramirez*, Deputy Butler had no information that a crime had been committed, was being committed, or that any of the four individuals in the disturbance possessed a weapon. The

officer in *Ramirez* had notice that the defendant was illegally carrying a firearm in a bar. Furthermore, the officer in *Ramirez* identified a bulge in the pocket of the defendant. In the instant case, Deputy Butler noticed nothing suspicious-looking about appellant except for his walking away. *Ramirez* cannot be used to justify appellant's detention.

The Court of Appeals also cited *Mays v. State*, 726 S.W.2d 937 (Tex.Crim.App.1986) for the statement that a police officer may briefly stop a suspicious individual to determine his identity or maintain the status quo. In *Mays*, a police officer was notified by the dispatcher of a burglary in progress at an apartment 225. Only two minutes later, the officer arrived at the apartment. As he approached the apartment, he saw a man standing in front of the door to 225 and another man sitting on the steps leading up to the apartment. The man on the steps, responding to the officer's question, stated that he was with the man at the door of the apartment. That clearly was a good case of reasonable suspicion. A report by a dispatcher coupled with two men at the exact address reported of a crime in progress surely justifies reasonable suspicion on the part of the investigating officer.

Unlike in *Mays*, Deputy Butler was not responding to a call from dispatch. The deputy was not informed of a crime in progress. There is little similarity in the facts surrounding the stop in *Mays* and the stop of appellant. Reasonable suspicion existed in *Mays*, but not in appellant's case.

Finally, the Court of Appeals frequently cited *Hoag v. State*, 728 S.W.2d 375 (Tex. Crim.App.1987) in support of its holding. In *Hoag*, this Court reversed a conviction, holding that the detention of the defendant was an illegal unjustified warrantless arrest. The police officer in *Hoag* was informed by telephone at the station of a burglary which had taken place. A brief investigation led to the belief that the defendant committed the burglary but the witnesses could not positively identify the defendant. Rather than question the defendant, the police officer contacted the burglary task force to place the defendant under surveillance. The defendant was observed in mid-morning driving to different apartment complexes. Each time, the defendant would leave his car and walk around the

complex for a short period of time. At the third stop, defendant disappeared for thirty minutes. The officer observed the defendant return to his vehicle, remove something from his pocket and place it on the floorboard of the vehicle. The defendant was also carrying a newspaper and a canned soft drink which he had not had before. The defendant was pulled over, removed from the car at gunpoint and taken to the back of the car. A search of the car revealed a knife, jewelry and coins. This Court held that the facts did not indicate that a burglary had taken place, nor did they show that the defendant in any way had committed a burglary or possessed stolen property in the presence of the police officers. The defendant's conviction was reversed.

Clearly, the facts of *Hoag* are far more suspicious than the facts in the case sub judice. Appellant was not suspected of any particular crime. Appellant was not followed by the police for any period of time. Appellant did nothing suspicious other than walk away, which we have stated was not a suspicious act. Furthermore, the police in *Hoag* knew who the defendant was, knew what crime he had been accused of, and knew that the defendant had a prior conviction for that crime. But, even in that case, nothing the defendant did amounted to a suspicious enough action to justify his detention. Much less then, given the innocuous actions in appellant's case, can appellant's detention be justified.

In the instant case, appellant's detention was based on no reasonable suspicion and therefore was an illegal stop. The trial court therefore abused its discretion in denying appellant's motion to suppress. The judgment of the Court of Appeals is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

CLINTON, J., concurs in the result.

BAIRD, J., not participating.

McCORMICK, Presiding Judge, dissenting.

I dissent because the majority opinion misapplies the "totality of the circumstances" test by individually examining in a vacuum each factor upon which Butler relied to temporarily detain appellant. Maj. Op. at ——. These factors, when taken together, justified appellant's temporary detention in order for Butler to investigate an anticipated breach of the peace which was the situation in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In addition, appellant's walking away, when considered with the other factors, is a circumstance justifying his temporary detention; this case does not present a situation where the *only* reason Butler detained appellant was because appellant walked away when Butler attempted to question him. (Emphasis Added). I would affirm the judgment of the Court of Appeals; because the majority does not, I dissent.

WHITE and MEYERS, JJ., join this dissent.