Zaegel-RL v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-170-CR

     ROBERT LOUIS ZAEGEL
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Criminal Court No. 4
Dallas County, Texas
Trial Court # MB93-39013-E
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant appeals from a judgment of the trial court which placed him on deferred
adjudication probation for six months and assessed a fine of $100.
      Appellant was charged by information with unlawfully possessing a pair of brass knuckles. 
Appellant filed a motion to suppress the evidence which the trial court overruled. The trial court
thereafter found the evidence substantiated Appellant's guilt but deferred adjudication of guilt and
placed him on six months probation plus a $100 fine.
      Two witnesses testified at the hearing on the motion to suppress. University Park Police
Officer Bahr testified: that he was on patrol in the SMU area at 3:30 a.m. on September 21, 1993;
he was driving near the intersection of Airline and McFarlin where a number of fraternity houses
were located; that several burglaries had occurred in the area in recent weeks; that he observed
two persons standing near a parked car in the driveway of a residence; that he noticed that the two
"kind of crouched down"; that the two ran, he yelled "stop," and Appellant hesitated; that he
pursued Appellant and apprehended him two houses from the location he first saw him; that he
smelled a strong odor of alcoholic beverage on his person; that he arrested him for public
intoxication; that he handcuffed and searched him and found brass knuckles in his back pocket.
      Appellant testified: that he was a 20-year-old SMU student living in the nearby freshman
dormitory; that his average was 3.65 GPA and he was majoring in accounting; that he was walking
on Airline on the sidewalk with a friend coming from the Green Elephant Restaurant and Bar; that
the officer came by and shined his light on him; that he and his friend did not crouch down; that
they were not near a parked car; that his friend ran and he continued walking; that the officer
pulled his car in front of him, got out of the car, called for him to come to him, which he did; that
without talking to him, the officer asked him to turn around, put his hands behind him, which he
did; that the officer handcuffed him; that the officer wanted to know who his friend was, and he
refused to tell him; that it was his understanding he was arrested because he would not tell the
officer who his friend was; that the officer told him if his friend has not run that he probably
would have just picked the two up and driven them home. Appellant spent the night in jail.
      The trial court overruled the motion to suppress the brass knuckles evidence at trial and found
the evidence substantiated Appellant's guilt; placed Appellant on deferred adjudication probation
for six months and fined him $100.
      In two points of error Appellant asserts the seizure of the evidence constituted a violation of
the Fourth Amendment to the U.S. Constitution and a violation of Article I, Section 9, of the
Texas Constitution. The Fourth Amendment of the U.S. Constitution and Article I, Section 9, of
the Texas Constitution both provide, in pertinent part, that the people shall be secure in their
persons against unreasonable searches and seizures.
      When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation,
the burden of proof is initially on the defendant. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim.
App. 1986). A defendant meets his burden by establishing that a search or seizure occurred
without a warrant. Mattei v. State, 455 S.W.2d 761, 765 (Tex. Crim. App. 1970). If the officer
did not have a warrant, the State must prove the reasonableness of the search and seizure. Russell,
supra, p. 9, 10. Here, the arrest and search of Appellant was without a warrant. Thus the State
had the burden of establishing the reasonableness of the officer's actions.
      Officers may stop and briefly detain persons suspected of criminal activity on less information
than is constitutionally required for probable cause to arrest. Nevertheless, even a temporary
detention of this kind is not permissible unless the circumstance upon which the officer relies
objectively supports a reasonable suspicion that the person detained actually is, has been, or soon
will be, engaged in criminal activity. And at a minimum, the suspicious conduct must be
sufficiently distinguishable from that of innocent people under the same circumstances as to
clearly, if not conclusively, set the suspect apart from them. Crockett v. State, 803 S.W.2d 308,
311 (Tex. Crim. App. 1991).
      An officer may briefly stop a suspicious individual to determine his identity. An individual
stopped may refuse to answer questions put to him and may go on his way. To justify a temporary
detention, the officer must have specific articulable facts which, in light of his experience and
knowledge taken with rational inferences, would reasonably warrant the intrusion on a citizen. 
Detention based on a mere hunch is illegal. There must be a reasonable suspicion by the officer
that some activity out of ordinary is occurring or has occurred; some suggestion to connect the
detained person with the unusual activity; and some indication that the activity is related to crime. 
And where the initial detention is unlawful, any evidence seized subsequent to such detention is
inadmissible. Gurrola v. State, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994); Glass v. State,
681 S.W.2d 599, 601 (Tex. Crim. App. 1984). Mere flight alone, or refusing to answer questions
of the officer, and walking away, does not justify investigative detention. Gurrola, supra, p. 303.
      Appellant's actions were consistent with legal activity. Nothing was articulated by the officer
to connect Appellant with any illegal activity or crime. Nothing was articulated by the officer to
objectively support a reasonable suspicion that Appellant would soon be engaged in criminal
activity.
      We think the officer lacked "reasonable suspicion" to conclude that Appellant was engaged
in or about to engage in illegal activity, and that the trial court erred in overruling Appellant's
motion to suppress.
      Points one and two are sustained. The judgment is reversed and the cause is remanded to the
trial court for further proceedings not inconsistent with this opinion.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance and
      Chief Justice McDonald (Retired)
Reversed and remanded
Opinion delivered and filed September 18, 1996
Do not publish 



rtment complex as Shirl. Raymond testified
that he could have been seen at the apartment complex during the time he was not living there
because he often visited his cousin, his sister, and his uncle, all of whom live there. 
      Taronna Haynes, Shirl’s neighbor, testified that the Smiths separated in the fall of 1997. She
stated that she saw Raymond around the complex visiting friends and relatives, but that he was not
living there at Thanksgiving or Christmas of 1997.
      Rufus Gatt, pastor of Shirl’s church, testified that he provided marriage counseling for the
Smiths. Gatt stated that he knew the couple were separated during 1997 because Raymond moved
his clothes to a shelter associated with the church, but he did not know where Raymond slept most
of the nights they were separated.
      Leroy Jones, the director of the shelter, testified that Raymond stayed at the shelter during
the latter part of 1997 only two nights. Jones testified that he did not know where Raymond
stayed when he was not at the shelter. 
      Sylvester Clark, Raymond’s uncle, testified that he worked as head of maintenance at the
apartment complex. He testified that he did not see Raymond around the apartments during the
latter part of 1997, and that when he asked why Raymond had not been around, Shirl told him that
they were separated. Clark further testified that Davis, the apartment manager, could not know
whether Raymond lived with Shirl because Davis never left her office. 
SUFFICIENCY OF THE EVIDENCE
      In her first issue, Shirl complains that the evidence is legally and factually insufficient to
support a finding that she intentionally defrauded TDHS by falsely stating that her employed
husband was not living in her household. She asserts that the evidence is clear that Raymond was
not living with her during the time in question.
Legal Sufficiency
      In determining whether the evidence is legally sufficient to support the verdict, we view the
evidence in the light most favorable to the verdict, asking whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Weightman v. State,
975 S.W.2d 621, 624 (Tex. Crim. App. 1998); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim.
App. 1996) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61
L.Ed.2d 560 (1979)); Westfall v. State, 970 S.W.2d 590, 595 (Tex. App.—Waco 1998, pet.
ref’d). The evidence is measured by the elements of the offense as defined by a hypothetically
correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 238-40 (Tex. Crim. App.
1997). 
      The evidence, as set forth above, shows that Raymond became employed in August of 1997,
and was removed from the apartment lease on September 1. Davis, the manager of the complex,
believed Raymond continued to live with Shirl because she saw him there on multiple occasions
while conducting inspections of the complex. A statement given by Shirl’s ex-husband, Griffin,
was offered into evidence in which Griffin stated that he believed Raymond lived with Shirl during
the time in question. Raymond’s employer testified that Raymond provided Shirl’s address as his
own when he was hired and that he never provided any change of address. He also testified that
Shirl and her children were covered by Raymond’s insurance. Reviewing the evidence in the light
most favorable to the verdict, we find the evidence to be sufficient for a rational jury to find the
elements of the crime beyond a reasonable doubt. Westfall, 970 S.W.2d at 595.
Factual Sufficiency
      In conducting a factual-sufficiency review, we examine all of the evidence impartially, and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). When performing our review, we give
due deference to the fact finder’s assessment of the weight and credibility of the evidence. 
Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997, pet. ref’d). We will find the
evidence factually insufficient only where necessary to prevent manifest injustice. Cain, 958
S.W.2d at 407.
      Reviewing the evidence without the prism of “in the light most favorable to the verdict,” we
find conflicting evidence. Griffin changed his testimony at trial, stating that he was not really sure
whether Raymond lived with Shirl even though he had told the investigator that he believed they
were living together. Multiple witnesses testified that Raymond could be seen visiting friends and
family at the complex and that he did not live with Shirl during the time in question. Raymond
testified that he lived at a shelter, although the evidence revealed that he stayed at the shelter only
two nights. Raymond also testified that he lived with his sister for a period of time, and that he
lived in his car part of the time. Shirl testified that Raymond was not living with her at the time
in question, but that she did not know where he was living. The jury could have chosen to
disbelieve these witnesses. Comparing the verdict to the record, we cannot say that the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis, 922 S.W.2d at 129. 
      Issue one is overruled.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Shirl raises an ineffective assistance of counsel claim in her second issue. She failed to raise
this claim in a motion for new trial or to bring it to the trial court’s attention in any manner.


 
Claims not presented to the trial court are not preserved for our review. Gonzalez v. State, No.
98-268-CR, slip op. at 8, n.3 (Tex. App.—Waco June 9, 1999, no pet. h.). Thus, issue two is
overruled.
      The judgment is affirmed.

                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed June 23, 1999
Do not publish