Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00445-CR

_______________

 

LAMAR ARNDRETTA BURTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1127633

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

 

A jury
found appellant, Lamar Arndretta Burton, guilty of possession, with intent to
deliver, four to two hundred grams of cocaine.  The jury found two enhancement
paragraphs true and assessed punishment at thirty-six years= confinement.  In a single issue,
appellant contends the trial court Areversibly erred@ in denying his motion to suppress
evidence.  Because our disposition is based on settled law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.








I.  Factual and Procedural Background

Based on
events occurring at a Houston motel, appellant was charged with possession of
cocaine, with intent to deliver.  He filed a pre-trial motion to suppress
evidence, contending his detention was without probable cause or reasonable
suspicion, his arrest and search were without probable cause and without a
warrant, and the items seized were products of the illegal arrest and search. 
The trial court did not hold a pre-trial hearing, instead indicating that, if
it granted the motion, the State would have no case and telling the parties it
would therefore consider the motion after the officers testified.

Trial
was to a jury.  The State called Houston Police Officers G.N. Duron and Jason
Turrentine, who provided the following evidence.

On
August 2, 2007, Duron and Turrentine were patrolling a high-crime area.  They
had patrolled the area as partners for three to four years as part of a Ahot spot@ unit.  Many of the motels in the
area, including the Royal Inn, experienced Aa lot of prostitution . . . stolen
vehicles . . . [and] drug activity.@  The Royal Inn had been the scene of
multiple arrests, with Duron and Turrentine having made between fifty and
one-hundred arrests in the eight months preceding August 2.[1]

Around
6:30 to 7:00 a.m., the officers saw four people, including appellant, in the
Royal Inn=s parking lot.  Appellant and another man were facing each other, their
hands were open, and they were looking at their hands.  According to
Turrentine, AOne looked like he was taking something from the other one, which in that
area we immediately believe that to be a narcotics transaction.@








As the
officers entered the parking lot, appellant and the other man saw them and
were  Astartled.@  Appellant started walking toward
one of the motel rooms.  According to Duron, the other man was Areal fidgety.@  Duron thought he was Agoing to bolt.@  The officers told everyone Anot to move,@ but appellant walked quickly away.

Turrentine
left his patrol car, followed appellant, and told him to stop.  Appellant
ignored the command and continued toward his ground-level motel room. 
According to Turrentine, as appellant opened the door, Turrentine grabbed
appellant=s left hand, and appellant dropped two rocks that Turrentine immediately
recognized as cocaine.  The rocks landed inside the room to the left of the
door.  Appellant=s momentum carried Turrentine and appellant into the room. 
Once inside, Turrentine saw a woman sitting on the bed and holding a crack
pipe.

Appellant
struggled with Turrentine inside the motel room.  Appellant told Turrentine to
get out of the room and resisted Turrentine=s attempts to restrain him, causing
Turrentine  twice to use his taser on appellant.  Turrentine eventually secured
appellant and saw a pair of men=s shoes next to the bed.  One shoe was stuffed with small
bills; the other, with cocaine.  Turrentine handcuffed appellant and the woman,
collected the cocaine appellant had dropped, and recovered the pipe and cocaine
from the bed.  After Turrentine took appellant and the woman to the patrol car,
he returned to the motel room and searched it.

At the
close of the State=s testimony, appellant testified out of the jury=s presence on his motion to suppress.[2] 
According to appellant, when he saw the officers pull into the Royal Inn
parking lot, he walked toward his motel room because he had a cup of beer in
his hand and Athat would [have] been like . . . an open container,@ and he did not want to cause any
confusion.  Appellant testified he did not hear anyone calling to him.  He also
testified he was in his room with the door closed when Turrentine kicked in the
door.  The focus of appellant=s argument at the hearing was on Turrentine=s allegedly illegal entry into the
room.








The trial court denied the motion and entered the following
findings in the record:

The Court finds, based on the credible testimony of both Officers Duron
and Turrentine, that when they arrived at the location, the Royal Inn, the
defendant was standing in the parking lot, that he then, as officers
approached, went toward his room, that as he arrived at the room, the Court
believes . . . Officer Turrentine=s
testimony . . . that he asked the defendant to stop, that he reached to grab
the defendant, the defendant opened the door and they were pulled into the room
and at that time as that was all going on, observed the defendant throw down
two rocks of crack cocaine which were then recovered.

And the Court does not find the testimony of Mr. Burton to be credible,
that he was already inside his room with the door closed, as the officer pulled
up, that the officer was not even out of his car when Mr. Burton got into the
room and shut the door.

 

The State rested.        

Appellant
testified in his own behalf and called two additional witnesses.  The jury
found appellant guilty.

II.  Preservation of Error

In a
single issue, appellant contends the trial court Areversibly erred@ when it denied his motion to
suppress evidence.  The State initially argues appellant failed to preserve
this issue for appeal because he did not timely object and because his
complaint in the trial court does not comport with his complaint on appeal.  We
disagree.

Appellant
filed a pre-trial motion to suppress evidence.  Before voir dire, appellant=s counsel drew the court=s attention to the motion and
indicated he was aware the trial court carried that motion with trial.  The
following interaction then ensued:








THE COURT: 
As far as the motion to suppress, what the State=s going to do is when they get ready to offer the drugs, they=re going to come up to the bench and I=m going to ask you if you have any evidence to put in
front of the jury=s presence.  If it=s
something you=re going to put on in front of the jury=s presence, you can decide whether or not I can rule
on it or I can rule then or we=ll hear
testimony outside the jury=s presence.  I=ll do that and rule at that point.  Okay?

[Defense Counsel]: All right.  I guess what I was thinking was since there may be some
mention in the State=s opening argument about these drugs and what was
found and these type [sic] things, where they were found, I was thinking more
of a hearing prior to opening statement to the jury so that if the Court does
grant the motion C

THE COURT: 
If the Court grants the motion, what else does the State have?

[Defense Counsel]:  I understand.

THE COURT: 
Nothing.

[Defense Counsel:] Okay.  All right.

 

The
trial court=s comments to defense counsel in the present case are virtually
indistinguishable from the comments in Garza v. State, in which the
court of criminal appeals held the defendant had preserved his challenge to
denial of his motion to suppress.  126 S.W.3d 79, 81B85 (Tex. Crim. App. 2004).  As in Garza,
appellant was reasonable to interpret the court=s comments Aas an instruction to seek a ruling at
the conclusion of the State=s presentation of evidence, and not sooner.@  Id. at 85.

The
State also characterizes appellant=s trial court complaint as relating
only to Turrentine=s entry into the motel room.  In his oral argument to the
court, appellant did focus exclusively on this aspect of the events.  In his
written motion, however, he also argued his initial detention was illegal.

We
conclude appellant has preserved his complaint for appeal.  We turn now to the
merits of his argument.

III.  Standard of Review








We
review a trial court=s ruling on a motion to suppress for abuse of discretion.  See 
Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993).  Accordingly,
we must give great deference to the trial court=s findings of historical facts as
long as the record supports the findings, especially when the findings are
based on an evaluation of credibility and demeanor.  See Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We afford the same amount of
deference to the trial court=s ruling on Amixed questions of law and fact@ when those issues turn on an
evaluation of witnesses= credibility and demeanor.  Id.  When rulings on Amixed questions of law and fact@ do not turn on an evaluation of
credibility and demeanor, we review the rulings de novo.  Id.  If the
trial court=s decision is correct on any theory of law applicable to the case, we
must sustain the decision.  State v. Ross, 32 S.W.3d 853, 855B56 (Tex. Crim. App. 2000).

IV.  Analysis

Appellant
argues the officers= initial stop of him was not justified.  He then argues, 
because he was illegally detained, he cannot be considered to have abandoned
the rocks of  cocaine.  Finally, he contends, because Turrentine=s entry into appellant=s motel room was not justified, the
plain view doctrine does not support seizure of the evidence inside the room. 
We turn to appellant=s first, and main, argument.

A police officer may stop and briefly detain a person for investigative purposes
if, under the totality of the circumstances, the officer has reasonable suspicion
supported by articulable facts that the person detained is, has been, or soon
will be, engaged in criminal activity.  Terry v. Ohio, 392 U.S. 1, 21
(1968); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 
Whether a detention is reasonable under the totality of the circumstances turns
on the content and reliability of the information the officer possesses.  Alabama
v. White, 496 U.S. 325, 330 (1990).








By the
time Turrentine told appellant to stop, the officers had observed (1) appellant=s  movement toward a motel room when
he saw the officers arrive at the parking lot, (2) appellant=s presence in a high crime area, (3)
appellant=s having appeared to have exchanged something with a companion in the
parking lot, and (4) the companion=s Afidgety@ behavior.  Although flight alone is
insufficient to justify an investigatory detention, flight from a show of
authority may be a factor supporting reasonable suspicion that a person is
involved in criminal activity.  Salazar v. State, 893 S.W.2d 138, 141
(Tex. App.CHouston [1st Dist.] 1995, pet. ref=d, untimely filed).  Presence in a
high crime area is also a factor.  Illinois v. Wardlow, 528 U.S. 119,
124 (2000).  Although the behavior of appellant and his companion was not
overtly criminal, that behavior, coupled with Turrentine=s knowledge of drug transactions,
could constitute yet another factor supporting a reasonable suspicion they were
engaging in criminal activity.  See Lunde v. State, 736 S.W.2d 665, 667
(Tex. Crim. App. 1987).[3]  In short,
Turrentine had reasonable suspicion to stop appellant.

Additionally,
when appellant continued moving away after Turrentine told him stop, Turrentine
had probable cause to arrest him for evading detention.  See Rue v. State,
958 S.W.2d 915, 918 (Tex. App.CHouston [14th Dist.] 1997, no pet.).  Even if one assumes
Turrentine pursued appellant into his motel room, Turrentine=s warrantless entry into the room was
justified under the exigent circumstances exception to the warrant requirement.
 See id.  Thus, despite appellant=s contention to the contrary,
Turrentine=s detention of appellant and Turrentine=s presence at the door of, or in,
appellant=s motel room were lawful.

At that
point, Turrentine saw appellant drop what Turrentine immediately believed were
two rocks of crack cocaine and saw the woman sitting on the bed and holding a
crack cocaine pipe.  Seizing property in plain view involves no invasion of
privacy and is presumptively reasonable.  Walter v. State, 28 S.W.3d 538,
541 (Tex. Crim. App. 2000).








For a
seizure to be justified under the plain view doctrine, (1) the police officer
must lawfully make the initial intrusion or otherwise properly be in a position
where he can view the contraband, (2) the officer must discover the
incriminating evidence inadvertently, and (3) it must be Aimmediately apparent@ to the police that the items they
observe may be evidence of a crime, contraband, or otherwise subject to
seizure.  Id.  Appellant contests only the first of these criteria. 
However, as we have explained above, Turrentine was properly at the motel room
door when he observed appellant drop the cocaine and saw the woman on the bed with
the crack cocaine pipe.[4]  At either
that point, or in the process of restraining appellant and removing appellant
and the woman from the room, Turrentine also observed the cocaine and money in
the shoes.  Seizure of the evidence was justified under the plain view
doctrine.[5]

The trial court did not abuse its discretion in
denying appellant=s motion to suppress evidence.  Accordingly, we
overrule appellant=s sole issue and affirm the trial court=s judgment.

 

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  When asked whether the number of arrests was less
than one hundred or less than fifty, Duron responded it was less than one
hundred, but he did not know whether it was less than fifty.





[2]  The State=s
chemist testified immediately after the officers and before the court heard the
motion.





[3]  Appellant analogizes his case to Gurrola v. State,
877 S.W.2d 300 (Tex. Crim. App. 1994), and  Smith v. State, 759 S.W.2d
163 (Tex. App.CHouston [14th Dist.] 1988, pet. ref=d).  In Gurrola, police observed four persons,
including the defendant, who were Aengaged
in no more than a heated discussion@ in
an apartment parking lot and who dispersed when the police arrived.  877 S.W.2d
at 302.  Smith was decided under the Aas
consistent with innocent as with criminal activity@ test.  See 759 S.W.2d at 165.  The court of
criminal appeals repudiated that test in Woods v. State, 956 S.W.2d 33,
38 (Tex. Crim. App. 1997). 





[4]  Because Turrentine=s presence at the motel door was not illegal, appellant=s argument the cocaine rocks were not Aabandoned@
also fails.  See Brimage v. State, 918 S.W.2d 466, 507 (Tex. Crim. App.
1996) (A[A]bandonment of property occurs if (1) the defendant
intended to abandon the property and (2) his decision to abandon the property
was not due to police misconduct.@)
(plurality op. on reh=g).    





[5]  Before securing appellant in the patrol car,
Turrentine, at a minimum, had seized the two rocks of cocaine appellant dropped
and two rocks of cocaine from the bed.  As discussed above, he had also seen
the shoes containing the money and the cocaine.  Neither the record nor the
parties= briefs clarify whether Turrentine collected the
contents of the shoes before or after appellant was in the patrol car. 
Appellant does not argue reentry of the motel room was unjustified or yielded
illegally seized evidence.