

## NUMBER 13-14-00181-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**ZACHARY ELLIS ARMSTRONG,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

---

**On appeal from the County Court at Law No. 4
of Montgomery County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Rodriguez**

Appellant Zachary Ellis Armstrong perfected an appeal from a judgment entered

by County Court at Law No. 4 in Montgomery County, Texas.[1]   A jury found Armstrong

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket equalization order issued by the Supreme Court of Texas.   *See* Tex. Gov't Code Ann. § 73.001 (West, Westlaw through 2013 3d C.S.).

guilty of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through 2013 3d C.S.). This appeal arises from the denial of Armstrong's motion to suppress evidence. By one issue, Armstrong complains that the detention and subsequent arrest were unconstitutional; therefore rendering the evidence introduced against him unconstitutional. We affirm.

## I. BACKGROUND

At the hearing on Armstrong's motion to suppress, James Dean, a local wrecker truck driver, testified that he flagged down Officer Billy McPike of the Conroe Police Department shortly after midnight on April 21, 2012. Dean testified that he informed Officer McPike about an incident that had just occurred involving Dean and Armstrong. Dean told Officer McPike that Armstrong was stopped behind him at a red light. When the light turned green, Armstrong repeatedly honked his horn, revved the engine of his vehicle, and then passed Dean at a high rate of speed while making aggressive arm gestures out of the window of his vehicle. According to Dean, while Armstrong was traveling at excessive rates of speed, he cut across four lanes of traffic.[2] Dean said that Armstrong was acting "as if he was trying to get him into some type of confrontation, as if he wanted to start a fight or something." Additionally, Dean stated he thought that Armstrong might be "drunk" based on his encounter with him. Dean was able to direct Officer McPike to Armstrong's location.[3]

---

[2] Dean initially told Officer McPike that Armstrong was "flying." Dean later clarified his testimony to confirm that he believed Armstrong was travelling at excessive rates of speed.

[3] Officer McPike observed Armstrong parking his vehicle in a public hotel parking lot.

Officer McPike testified that he interpreted Dean's description of the events as a possible road rage incident, believed that Armstrong had driven too fast, and believed that Armstrong had made unsafe lane changes. From experience, Officer McPike stated that road rage incidents can lead to collisions and assaults and that they frequently involve individuals who have had their judgment impaired by alcohol. Based on the information provided by Dean and his own prior experiences, Officer McPike turned on his overhead lights, pulled into the parking lot, and asked Armstrong to "come here" in a commanding voice. When Officer McPike asked Armstrong about the incident, Armstrong denied that anything had occurred. At that time, Officer McPike returned to his patrol vehicle to run a warrant search on Armstrong.

Conroe Police Officer Brett Irvine testified that he heard Officer McPike call in the incident and he arrived to assist within four minutes of Officer McPike's initial contact with Armstrong. Officer Irving testified that Officer McPike relayed Dean's statements and told Officer Irving that he believed Armstrong was possibly intoxicated. Officer Irving then took over the investigation.

Officer Irving testified that upon arriving at the scene he smelled an odor of alcohol on Armstrong's breath, observed that Armstrong's eyes were red, and noted that Armstrong had trouble maintaining his balance while walking. Officer Irving administered the standardized field sobriety tests: the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Officer Irving testified that Armstrong exhibited six clues on the HGN test, five clues on the walk-and-turn test, and four clues on the one-leg-stand test. Armstrong was arrested for suspicion of driving while

intoxicated, and Officer Irving obtained a search warrant for a sample of Armstrong's blood.  The blood test showed that Armstrong's blood alcohol was 0.181, over twice the legal limit.

Armstrong was charged, by information, with the misdemeanor offense of driving while intoxicated.  Before trial, Armstrong filed a motion to suppress evidence based on his contention that Officer McPike lacked a reasonable suspicion for the initial stop.  After an evidentiary hearing on the motion, the trial court denied Armstrong's motion to suppress.  A jury found Armstrong guilty of driving while intoxicated, sentenced him to three days in jail, and assessed a $2,000.00 fine.  On appeal, Armstrong brings one issue, complaining of the trial court's denial of his motion to suppress.

## II.    STANDARD OF REVIEW

In conducting a review on the propriety of a trial court's ruling on a motion to suppress, we first determine the applicable standard of review.  *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Appellate courts should show almost total deference to the trial court's findings of fact or applications of the law of search and seizure to the facts when they are based on an evaluation of credibility and demeanor. *See id.*  In showing such deference, we view the evidence in the light most favorable to the trial court's ruling, and only conduct a de novo review of determinations of reasonable suspicion and probable cause.  *See id.* at 89.

We review de novo rulings based on mixed questions of law and fact that are not based in credibility, as well as the application of the law to uncontested facts.  *See Maestas v. State*, 987 S.W.2d 59, 62 n.8 (Tex. Crim. App. 1999); *Guzman,* 955 S.W.2d

4

at 89. We review the record anew, and if the facts and circumstances known to the officers objectively constituted a lawful basis for a detention, we will validate that detention on appeal regardless of the officers' subjective reasoning for the detention. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App.1992) (en banc).

### III. APPLICABLE LAW

A police officer may lawfully stop a motorist who commits a traffic violation. *See Powell,* 5 S.W.3d at 376. Such an event is a routine investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also Fowlkes v. State,* No. 05-00-01358-CR, 2001 WL 881706, at *3 (Tex. App.—Dallas Aug. 7, 2001, pet. denied) (mem. op.) (not designated for publication). Additionally, an officer may justifiably stop a motorist if the officer has a reasonable suspicion that some activity related to the commission of a crime is occurring or has occurred and that the motorist is connected with the activity. *See Terry v. Ohio,* 392 U.S. 1, 21–22 (1968); *Crain v. State,* 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972)

Officers may rely on information provided to police from citizen-informants who identify themselves and can be held to account for the accuracy and veracity of their report. *Id.* at 147. In such a scenario, the only question is whether the information that the identified citizen provides, viewed through the prism of the detaining officer's particular

5

level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Derichsweiler v. State,* 348 S.W.3d 906 915–16 (Tex. Crim. App. 2011).

Whether the officer's suspicion is reasonable or not must be examined in terms of the totality of the circumstances. *See Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App.1997) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1989)). Reasonable suspicion requires an officer to possess specific articulable facts which, in light of his experience and personal knowledge, and taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be, engaged in criminal activity. *See id.* at 38; *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).

Facts relied upon to give rise to reasonable suspicion need not show that the detainee has committed, is committing, or is about to commit, a particular and *distinctively-identifiable* penal offense. *See Derichsweiler,* 348 S.W.3d at 916. "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). To support a reasonable suspicion, the articulable facts must show that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Derichsweiler,* 348 S.W.3d at 916 (finding that the defendant's conduct of pulling up and staring at an identified citizen for two separate thirty second intervals and his actions doing the same to other parked vehicles, while not overtly

6

criminal in any way, was bizarre enough to support a suspicion that he was attempting to criminally exploit vulnerabilities).

The higher standard attributable to a finding of probable cause is unnecessary because a brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a custodial arrest.[4]  *Id.*  "So long as the intrusion does not exceed the legitimate scope of such a detention and evolve into the greater intrusiveness inherent in an arrest-*sans*-probable-cause, the Fourth Amendment will tolerate a certain degree of police proaction."[5]  *Id.* at 916–17.

## IV.  ANALYSIS

Armstrong's main contention is that his initial detention by Officer McPike was in error, thereby tainting all subsequent evidence obtained and used at the time of trial. Officer McPike testified that Dean flagged him down and informed him that he had just been involved in an incident in which Armstrong was driving erratically and aggressively. Officer McPike understood that Armstrong honked his horn, revved his engine, and cut in front of Dean while travelling at an inappropriate rate of speed and making aggressive arm gestures.  *See Adams,* 407 U.S. at 146–74; *Derichsweiler,* 348 S.W.3d at 915–16; *Woods,* 956 S.W.2d at 37.  He testified that such driving is often indicative of road rage

---

[4] Because a detention is less intrusive than an arrest, the specificity with which the articulable information known to the police must demonstrate that a particular penal offense has occurred, is occurring, or soon will occur, is concomitantly less.  *Derichsweiler v. State,* 348 S.W.3d 906, 916 (Tex. Crim. App. 2011).

[5] The record has established that an hour and thirteen minutes passed from the time that Officer McPike first contacted Anderson until the time that Anderson was arrested and a warrant was issued for a blood draw.  Officer Irving initiated his DWI investigation within four minutes of Anderson's detention. Anderson did not make any argument regarding the scope of his detention, other than to claim that it was wholly improper and not based on a reasonable suspicion.

and that he had experience in which similar incidents turned into assaults or traffic accidents. *See Woods,* 956 S.W.2d at 37; *Gurrola,* 877 S.W.2d at 302. As such, recognizing a situation where he testified that alcohol was often a factor, he detained Armstrong to investigate possible criminal activity. *See Woods,* 956 S.W.2d at 37; *Gurrola,* 877 S.W.2d at 302. He determined, pursuant to the incident Dean recounted and his own contact with Armstrong, that there was also a possible alcohol-related violation. *See Adams,* 407 U.S. at 146–47; *Derichsweiler,* 348 S.W.3d at 915–16. Officer McPike made his determination to stop Armstrong on the basis of specific facts that allowed him to objectively conclude that Armstrong was, or had been, engaged in criminal activity.

Officer McPike was justified in relying on the facts presented by Dean in articulating his reasonable suspicion: Officer McPike had been made aware that Anderson engaged in activity that was out of the ordinary, Dean specifically identified Anderson as the perpetrator of the unusual activity, and Officer McPike relied on his experience as an officer of the law to determine that Anderson's aggressive driving patterns and behaviors provided some indication that Anderson's actions were related to a crime. *See Derichsweiler,* 348 S.W.3d at 916; *Meeks,* 653 S.W.2d at 12. Dean did more than merely identify himself to the officers: he personally directed Officer McPike to Anderson's vehicle; he spoke with Officer McPike and Officer Irving about the road rage incident; and he remained on the scene throughout the detention that lead to Anderson's arrest.

Under our de novo review, we conclude that Officer McPike had reasonable

suspicion to stop Anderson.[6]  *See Guzman,* 955 S.W.2d at 89.  The trial court did not

abuse its discretion in denying Anderson's motion to suppress.  *See Powell,* 5 S.W.3d at

375.  We overrule Anderson's sole issue on appeal.

## V.    CONCLUSION

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of May, 2015.

---

[6] The time the event occurred, the facts recounted by Dean about Armstrong's aggressive driving, and Officer McPike's personal knowledge and experience on the police force in which he had dealt with similar circumstances where similar road rage incidents either lead to accidents or were indicative of alcohol involvement, provided a reasonable basis for suspicion.