

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00351-CR

**SAVANNAH MARIE SCARBOROUGH,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 82nd District Court
Falls County, Texas
Trial Court No. 11096**

## MEMORANDUM  OPINION

Savannah Scarborough pled guilty to the state-jail felony offense of possession of a controlled substance, methamphetamine.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b).  The trial court found Scarborough guilty, assessed her punishment at two years' confinement and a fine of $1,500, suspended imposition of the sentence, and placed her on community supervision for a term of three years.  Scarborough brings this appeal to challenge the trial court's denial of her pretrial motion to suppress.  Scarborough contends that the methamphetamine found in her possession should have been

suppressed because the police unlawfully detained her beyond the completion of a traffic stop and conducted an unlawful dog sniff search around her vehicle.

AUTHORITY

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to the trial court's rulings on mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. "We conduct a *de novo* review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing *Guzman*, 955 S.W.2d at 89). We also review the trial court's legal rulings *de novo*. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019).

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Furthermore, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When explicit findings of fact are not made by the trial court, the appellate court infers the necessary factual findings that support the trial court's ruling if the record

evidence, when viewed in the light most favorable to the ruling, supports these implied fact findings. *Garcia–Cantu*, 253 S.W.3d at 241. Only in the narrow circumstances when video evidence provides indisputable visual evidence contradicting witness testimony and does not pivot on an evaluation of credibility and demeanor should we decline to give "almost total deference" to the trial court's implicit findings. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). If the trial court could have reasonably denied a motion to suppress given the record evidence and given the applicable law, the appellate court must affirm the trial court's ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The Fourth Amendment does not forbid all seizures, just unreasonable seizures. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). The detention of an individual may be justified on less than probable cause if the individual is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Carmouche*, 10 S.W.3d at 328. "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). Reasonable suspicion is not only based on the officer's personal observations but can also be supplied by other persons. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

"In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews*, 431 S.W.3d at 603. Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot. *Id.*

DISCUSSION

After dark on the evening of July 30, 2021, Officer Jared Bonner with the City of Marlin Police Department noticed a car illegally parked in front of a house he knew to be heavily involved in the sale of illegal drugs. Bonner then observed Scarborough approach the illegally parked car as she was walking away from the house and recognized Scarborough from her employment at a local convenience store he frequented. Bonner approached Scarborough and informed her of the traffic violation. Scarborough replied that she had just dropped someone off and gestured with her hand toward the house. Bonner then asked Scarborough to take a seat in her car and asked for her driver's license and proof of insurance. Scarborough retrieved her driver's license and tendered it to Bonner. While Scarborough was searching for her proof of insurance, Bonner asked her if she had anything illegal in the car like guns, drugs, or knives, and she replied that she did not. Bonner also asked Scarborough if there was any reason a canine would alert on her car, and she replied "no."

At about four minutes into the encounter, Scarborough was able to provide her proof-of-insurance information to Bonner. Once Bonner had both Scarborough's driver's license and proof-of-insurance information, he returned to his patrol car to verify

Scarborough's proof of insurance, registration, and driver's license and to check for outstanding warrants. At approximately six minutes into the encounter, Bonner had confirmed Scarborough's proof of insurance and registration and was receiving confirmation of Scarborough's driver's license information. At the time the driver's license confirmation came through, Bonner had begun the process of making his request that a narcotics detection canine handler be dispatched to his location. Bonner still had the task of preparing the written warning that he later indicated he planned to issue. The canine handler arrived at approximately fourteen minutes. The canine handler began the open-air dog sniff at about sixteen minutes and forty-five seconds into the encounter. The canine made a positive alert on Scarborough's car, and prior to the search of her car, Scarborough acknowledged to Bonner that she had methamphetamine in her car.

Scarborough later filed a pretrial motion to suppress the methamphetamine. The trial court issued a letter ruling denying the motion to suppress, which provided:

> The Court[,] having heard the testimony of the officer, having reviewed the body camera's video[,] and having reviewed the submitted case law[,] finds the traffic stop of Defendant was lawful and was not unlawfully prolonged. Additionally, the police officer was able to articulate facts to support reasonable suspicion that criminal activity was afoot apart from the traffic stop itself sufficient to justify calling the canine unit.

> The totality of the circumstances justified the police officer to be reasonabl[y] suspicious that criminal activity was afoot and the officer was justified in having the canine unit called which lead [sic] to the search of the vehicle.

> The Motion to Suppress is denied.

We recognize that reasonable suspicion is required after a traffic stop to prolong the detention once the purpose of the stop has been completed. *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd). However, if an officer develops reasonable suspicion during the initial traffic stop that another violation has occurred, the scope of the initial investigation expands to include the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Sims v. State*, 98 S.W.3d 292, 295–97 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)). Here, the evidence—Bonner's testimony and body camera video—shows that Bonner was close to completing the matters related to the traffic offense but waited for the canine deputy to arrive. Bonner's reasons for requesting the canine included: Scarborough's having dated an individual who sold illegal drugs, Scarborough's coming from a house Bonner knew to be heavily involved in the sale of illegal drugs, Bonner's making of several arrests of individuals who had just left the house with illegal drugs, and Bonner's observation during the stop that Scarborough's chest was rising and falling giving him a belief that Scarborough was "nervous as hell."

Scarborough argues that the facts of this case are similar to those in *State v. Wofford*, No. 10-15-00206-CR, 2016 WL 1389701 (Tex. App.—Waco Apr. 7, 2016, no pet.) (mem. op., not designated for publication). The facts in *Wofford* involved a peace officer watching a house known for illegal drug activity and the officer observing Wofford sitting in the passenger seat of a car parked in front of the house. *Id.* at *2. The officer also knew Wofford had been involved in "drug related activities." *Id.* The officer saw an individual come out of the house, get in the car with Wofford, and drive away. *Id.* The officer

followed the car during which the officer observed two traffic offenses for which he initiated a traffic stop. *Id.* After a driver's license check and warrant check, the officer asked for consent to search the car, which was denied by the driver. *Id.* On appeal, the State admitted that the only facts the officer had for detaining Wofford were Wofford's presence in a vehicle outside a house where drug activity was suspected and Wofford's "drug-related activities." *Id.* This Court concluded that "[b]y themselves, neither of these facts establish reasonable suspicion," citing *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012), and *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). *Wofford*, 2016 WL 1389701, at *2. We then reasoned that "[e]ven combined, these facts are not enough to support reasonable suspicion" and that, other than these generalities, there was no other evidence regarding the alleged drug activity at the house and Wofford's "drug-related activities." *Id.* We noted Wofford did not go into the house and no one witnessed an exchange of anything between the driver and Wofford as the driver came out of the house. *Id.* We concluded that the information the officer had amounted to only a hunch, rather than reasonable suspicion. *Id.*

This case, however, is distinguishable from *Wofford*. Here, Scarborough was observed coming from the suspect house. Bonner also testified he observed Scarborough exhibit a physical manifestation of nervousness and he had approximately four minutes to make his observation while Scarborough was locating her proof of insurance. It was this observation that gave him the belief that Scarborough was extremely nervous. In *Wofford*, the opportunity for the officer to observe Wofford and to evaluate his state of nervousness was significantly undermined by video evidence of the encounter. The

video evidence here does not present indisputable visual evidence contradicting Bonner's assertion Scarborough was extremely nervous. *See Carmouche*, 10 S.W.3d at 332, *see also Hamal*, 390 S.W.3d at 308 (stating that nervousness is not sufficient alone to establish reasonable suspicion but that it can do so in combination with other factors). Furthermore, additional facts known to Bonner, not present in *Wofford*, included a history of making several arrests of individuals who had just left the suspect house and Scarborough's having dated an individual who sold illegal drugs.

Scarborough argues that the body camera video shows that her detention was extended beyond the time needed to complete the traffic stop. We conclude, however, that the extension of the stop was lawful because Bonner obtained information during the initial stop wherein, he acquired "articulable facts that, when combined with rational inferences from those facts" led him to have a reasonable belief that Scarborough was engaged in criminal activity. *See Love v. State*, 252 S.W.3d 684, 688 (Tex. App.—Texarkana 2008, pet. ref'd) (citing *Castro v. State*, 227 S.W.3d 737, 740 (Tex. Crim. App. 2007)). Because the evidence, viewed in the light most favorable to the trial court's ruling, supports the trial court's conclusion that the traffic stop of Scarborough was lawful and was not unlawfully prolonged, we conclude, based on our review of the totality of the circumstances, that the trial court did not abuse its discretion in denying Scarborough's motion to suppress. We overrule Scarborough's issue. We affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Affirmed
Opinion delivered and filed February 29, 2024
Do not publish
[CR25]

