PD-0444-15

IN THE
COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| DEZMONE PINKSTON, | § | |
| *APPELLANT* | § | |
| | § | |
| V. | § | NO. PD-0444-15 |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | |

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBER 02-14-00041-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBER 1329761D IN CRIMINAL DISTRICT COURT NO. THREE OF TARRANT COUNTY, TEXAS; THE HONORABLE ROBB CATALANO, PRESIDING.*

STATE'S PETITION FOR REVIEW

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

JAMES GIBSON, Assistant
Criminal District Attorney
State Bar No. 00787533
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@TarrantCounty.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE CASE.................................................................................1

PROCEDURAL HISTORY AND COURT OF APPEALS' OPINION...................2

QUESTIONS FOR REVIEW ...................................................................................2

STATEMENT OF FACTS .......................................................................................3

DISCUSSION ..........................................................................................................5

CONCLUSION .......................................................................................................14

PRAYER .................................................................................................................14

CERTIFICATE OF COMPLIANCE.....................................................................15

CERTIFICATE OF SERVICE ..............................................................................15

COURT OF APPEALS' OPINION.......................................................APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crain v. State*,
315 S.W.3d 43 (Tex. Crim. App. 2010) ........................................................8, 11

*Derichsweiler v. State*,
348 S.W.3d 906 (Tex. Crim. App. 2011) ...........................................5, 6, 10, 11

*Gurrola v. State*,
877 S.W.2d 300 (Tex. Crim. App. 1994) ....................................................*passim*

*Pinkston v. State*,
No. 02-14-00041-CR, 2015 WL 1262919
(Tex. App.—Fort Worth March 19, 2015, pet. filed)
(mem. op., not for publication)(attached as appendix)...............................*passim*

*Schwartz v. State*,
635 S.W.2d 545 (Tex. Crim. App. [Panel Op.] 1982)....................................7, 8

*State v. Madrigal*,
827 P.2d 1105 (Wash. Ct. App. 1992).............................................................13n

*State v. Olson*,
729 N.W.2d 132 (N.D. 2007) ..........................................................................13n

*Tanner v. State*,
228 S.W.3d 852 (Tex. App.—Austin 2007, no pet.)..........................................11

*Terry v. Ohio*,
392 U.S. 1 (1968)..............................................................................................5, 8

*Torres v. State*,
No. 05-98-00615-CR, 1999 WL 415380
(Tex. App.—Dallas June 23, 1999, no pet.) (unpublished)..................................9

*United States v. Arvizu*,
534 U.S. 266 (2002)................................................................................................6

*United States v. Brignoni-Ponce*,
   422 U.S. 873 (1975)...................................................................................5

*United States v. Cortez*,
   449 U.S. 411 (1981)...................................................................................5

*United States v. McHugh*,
   639 F.3d 1250 (10th Cir. 2011) .......................................................12

*United States v. Sokolow*,
   490 U.S. 1 (1989)................................................................................5, 8

*Woods v. State*,
   956 S.W.2d 33 (Tex. Crim. App. 1997) .......................................8, 8n

IN THE
COURT OF CRIMINAL APPEALS

| DEZMONE PINKSTON, | § | |
| *APPELLANT* | § | |
| | § | |
| V. | § | NO. PD-0444-15 |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | |

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBER 02-14-00041-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBER 1329761D IN CRIMINAL DISTRICT COURT NO. THREE OF TARRANT COUNTY, TEXAS; THE HONORABLE ROBB CATALANO, PRESIDING.*

STATEMENT REGARDING ORAL ARGUMENT

Because the bulk of this petition questions the continued viability of an earlier opinion from this Court, oral argument would be helpful in presenting the State's views and answering the Court's concerns about whether that opinion has been definitively overruled.

STATEMENT OF THE CASE

Appellant was indicted for possession of less than a gram of cocaine. CR 5. He pled guilty to the offense, reserving for appeal the issue of whether the officer who detained him had adequate reasonable suspicion to do so. CR 25, 29. He was sentenced to sixty days in jail.

1

PROCEDURAL HISTORY AND COURT OF APPEALS' OPINION

Appellant complained on appeal that the officer who detained him and found cocaine did so without sufficient reasonable suspicion. App. brief at 8-9.

A panel of the Fort Worth Court of Appeals agreed with Appellant. *Pinkston v. State*, No. 02-14-00041-CR, 2015 WL 1262919 (Tex. App.—Fort Worth March 19, 2015, pet. filed) (mem. op., not for publication) (attached as appendix). The panel held that, essentially, the facts of Appellant's case were indistinguishable from an earlier case from this Court which found no reasonable suspicion to detain that defendant. *Id*. at *3.

QUESTION FOR REVIEW

Did the court of appeals rely on overruled and outdated caselaw when it found that the police officer in Appellant's case detained him without adequate reasonable suspicion? RR 9-12.

## STATEMENT OF FACTS

Police attempted to detain Appellant, who did not cooperate. He was arrested for evading that detention. RR 11. As a result of a search incident to arrest, police found cocaine on him. RR 12. Appellant pled guilty to the charge of possessing a controlled substance, reserving for appeal the trial court's decision that Appellant's initial detention was legal. CR 25, 29.

Officer Barrett Galbraith was working the midnight shift on the east side of Fort Worth on January 7, 2013. RR 5-6. Specifically, he and a couple of other officers did a foot patrol at the Regency Oaks apartment complex. RR 6. According to Officer Galbraith, those apartments have a high level of violent and narcotic crimes. *Id*. In his experience, Officer Galbraith has worked shootings and instances of family violence, including at those apartments. RR 7.

On that night, as the officers walked around the apartment complex, many residents who were standing outside went into their homes when they saw the policemen. RR 8. As he was preparing to leave and answer other calls, Officer Galbraith heard an argument in another courtyard, on the other side of a building. RR 9. He described it in his report as "yelling and screaming." *Id*. The voices were obviously that of a male and female. *Id*. Officer Galbraith decided to investigate.

*Id.* He thought that the sounds he heard were consistent with what could have been a domestic assault. RR 10.

As Officer Galbraith rounded the corner, he saw the couple arguing. *Id.* As soon as they saw him, they stopped arguing and began to walk away from him. *Id.* From Officer Galbraith's point of view, it seemed that something had happened and they were trying to get away so they would not have to talk with him. *Id.* The officer walked after them and told them to come back and talk to him. RR 11. The woman stopped, but the man did not. *Id.* Officer Galbraith and the other officers chased after the man and caught him. *Id.* They arrested him for evading detention. *Id.* In a search incident to arrest, the officers discovered what appeared to be cocaine. RR 12. The arrested man was Appellant. *Id.*

## DISCUSSION

*The Fort Worth Court's reliance on Gurrola v. State was a mistake – Gurrola is no longer good law.*

Appellant claimed that Officer Galbraith did not have sufficient reasonable suspicion to detain him. App. brief at 8-9. The Fort Worth Court agreed and reversed the trial court's judgment. *Pinkston*, 2015 WL 1262919 at *4.

When a law enforcement officer has reasonable suspicion to believe that a person is engaged in criminal activity, he may temporarily detain that person to investigate the possible criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975). Suspicion to detain is reasonable where the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is an objective one – it disregards the officer's subjective intentions and looks to whether there was an objectively justifiable basis for the detention. *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

The standard articulated above looks to the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Individual circumstances may indeed seem innocent in isolation; however the combination of those

5

circumstances may amount to such a suggestion of criminal conduct that a temporary detention and investigation is justified. *Derichsweiler*, 348 S.W.3d at 914. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) ("The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase.").

The Fort Worth Court mainly relied on this Court's opinion in *Gurrola v. State*, 877 S.W.2d 300 (Tex. Crim. App. 1994). *Pinkston*, 2015 WL 1262919 at *3. In *Gurrola*, an unknown man reported to a sheriff's deputy that some type of disturbance was occurring at an apartment complex. *Gurrola*, 877 S.W.2d at 301. It was late afternoon. *Id*. The officer described the apartment complex as an "unsafe" location. *Id*. Upon arriving, the officer saw three men and a woman arguing. *Id*. He approached to find out what was going on, but on seeing him they all began to leave. *Id*. He ordered them to come back. *Id*. A pat-down search revealed a handgun and drugs on Gurrola. *Id*.

This Court held that Gurrola's detention was without adequate reasonable suspicion. First, the opinion downplayed the seriousness of the argument which led to the investigation. It was "no more than a heated discussion," characterized by the deputy in his report as a "disturbance." *Gurrola*, 877 S.W.2d at 302. It certainly

6

was not an "altercation." *Id.* This Court also placed importance on the fact that four people arguing in a parking lot in the late afternoon was not out of the ordinary. *Id.* In fact, according to this Court, "a residential parking lot in the late afternoon does not give rise to the same suspicions as does an empty department store parking lot at 1:30 a.m." *Id.* at 303. Second, this Court emphasized that mere flight from a law enforcement officer is insufficient to justify an investigative detention – an individual has a right to refuse questions by officers who have no reasonable suspicion. *Id.*

Most important, however, is a consistent thread running through the opinion: that Gurrola was not suspected of having committed any particular crime and that what he was doing was consistent with "entirely innocent activity." *Id.* at 304, 305. Certainly, the opinion took pains to label Gurrola's argument with his companions as merely innocent. *See id.* at 304 ("Standing in a residential parking lot in the late afternoon having an aggressive conversation is an entirely innocent activity."). In addition, this Court relied on its opinion in *Schwartz v. State*, 635 S.W.2d 545 (Tex. Crim. App. [Panel Op.] 1982). In that case, a policeman detained juveniles in a truck by a gas station after closing, thinking they might have alcoholic beverages. *Id.* at 546. As the officer admitted that it would not be "unusual" for someone at that time of night to be using the car washing stalls, the Court held that

7

the actions of the truck's driver was "as consistent with innocent activity as with criminal activity," and the seized contraband would have to be suppressed. *Id.* at 646, 647.

This "as consistent with innocent activity as with criminal activity" test was formally repudiated by this Court in *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). That opinion emphasized the development in the rules regarding temporary detentions since *Terry, supra*, and that the Supreme Court had recognized that a detention need not be based on a suspect's unlawful conduct, or conduct that was inconsistent with innocence. *Id*. (*citing United States v. Sokolow*, 490 U.S. 1, 10 (1989)).[1]

The State pointed out to the Fort Worth Court that relying on *Gurrola* would necessitate relying on the repudiated construct that formed at least part of the basis of that opinion. State's brief at 10. The Fort Worth Court would have none of that: "[I]t is not this court's prerogative to refuse to follow the court of criminal appeals's decisions." *Pinkston*, 2015 WL 1262919 at *3. In addition, the Fort Worth Court based its conception of the continued viability of *Gurrola* on the fact that it had been "recently cited" by this Court. *Id*. (*citing Crain v. State*, 315 S.W.3d 43, 49 n.16 (Tex. Crim. App. 2010)).

---

[1] It should be pointed out that this Court in *Woods* specifically overruled *Schwartz* as to the "as consistent with innocent activity as with criminal activity" language that was relied on in *Gurrola*. *Woods*, 956 S.W.2d at 36 n.3.

Of course, the State did not ask the Fort Worth Court to overrule this Court. It merely pointed out to the panel a basic fact: that the foundation of *Gurrola* was the "as consistent with" construct, and that this construct had been subsequently overruled. Another court of appeals came to that same conclusion about *Gurrola* – and didn't seem to think it was "overruling" this Court. In *Torres v. State*, No. 05-98-00615-CR, 1999 WL 415380 (Tex. App.—Dallas June 23, 1999, no pet.) (unpublished), a police officer was contacted by an employee of a business who reported an instance of domestic violence. *Id*. at *2. The officer found the two people involved, searched the defendant, and found a weapon. *Id.* The Dallas Court of Appeals held that the search of the defendant was justified on the basis of reasonable suspicion that the defendant had or was about to commit a crime. *Id*. The court distinguished *Gurrola* on its facts, noting that someone had reported what was an actual possible crime (as opposed to the officer witnessing a mere argument). *Id.* at 3. However, the Dallas court also noted that *Gurrola* employed the outdated "as consistent with innocent activity as with criminal activity" construct that this Court had rejected. *Id*.

The Dallas court understood something that the Fort Worth court refused to consider – the law sometimes changes and the holdings from older cases (even ones from this Court) must be considered with these changes in mind.

9

*Derichsweiler, supra,* is a good example of that. It is hard to imagine that *Gurrola* (or, for that matter, the opinion in Appellant's case) could have survived an analysis tied to this Court's opinion in *Derichsweiler*. Specifically, in that case, this Court held that it is not necessary that a temporary detention be based on a "particular and distinctively identifiable penal offense." *Derichsweiler*, 348 S.W.3d at 916. Further:

> Particularly with respect to information suggesting that a crime is about to occur, the requirement that there be "some indication that the unusual activity is related to crime" does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent. It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—i.e., it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing.

*Id*. at 917 (citations omitted, italics in original). *Gurrola*, on the other hand, explicitly underlines the importance of the lack of a particular penal offense. *See Gurrola*, 877 S.W.2d at 305 ("Appellant was not suspected of any particular crime."). Although the Fort Worth Court does not come right out and say it, one gets the feeling that the panel would have been more receptive to a report of an actual crime taking place. *See Pinkston*, 2015 WL 1262919 at *3 ("But unlike in *Gurrola*, the officers in this case had not received an uncorroborated complaint of a disturbance."). But *Derichsweiler* confirmed that such a view is not required: the

requirement that unusual activity be related to crime does not necessarily mean that the information point to a definite offense. *Derichsweiler*, 348 S.W.3d at 917.[2]

As an aside, the State finds fault with the Fort Worth Court's assumption that *Gurrola* must be good law because this Court cited it in 2010. *See Pinkston*, 2015 WL 1262919 at *3 ("Moreover, the court of criminal appeals has recently cited *Gurrola* in its analysis of what constitutes reasonable suspicion to detain an individual."). The opinion in *Crain* certainly cites *Gurrola*. But *Crain*'s reliance on *Gurrola* was limited to the fact that a reviewing court should employ a "totality of the circumstances" analysis when trying to decide which category of police-citizen interaction a given situation falls in. *Crain*, 315 S.W.3d at 49. That's it. The Fort Worth Court was wrong to read into this citation an intent on the part of this Court to resurrect the "as consistent with innocent activity as with criminal activity" construct.

Finally, it bears mention that the State should have prevailed in this case, even under the straitjacketed and outdated analysis in *Gurrola* that was followed by the Fort Worth Court. In the first place, Appellant's detention took place at night, not in the afternoon sun. *See Tanner v. State*, 228 S.W.3d 852, 858 (Tex. App.—Austin 2007, no pet.) (fact that detention was middle of the night and in suspicious place are factors to be considered together in reasonable suspicion

---

[2] The Fort Worth Court did not mention *Derichsweiler*.

analysis); *see also United States v. McHugh*, 639 F.3d 1250, 1257 (10th Cir. 2011) (lateness of hour, though not dispositive by itself, is factor to be used in assessing reasonableness of detention). The fact that, in Appellant's case, the officers heard what appeared to be yelling and screaming late at night, in an area known for drug use and domestic violence, should likewise be a factor in a reasonable suspicion analysis.

Second, what Officer Galbraith heard far outshone what this Court was faced with in *Gurrola*. In *Gurolla*, the detained persons were, according to this Court, "engaged in no more than a heated discussion." *Gurolla*, 877 S.W.2d at 302. The officer described it as a "disturbance," and the Court disagreed with the court of appeals' conclusion that it was an "altercation." *Id*. This Court, in fact, made clear that what the officer in *Gurolla* saw was "an entirely innocent activity," and that the defendant could not have been suspected of any crime. *Id*. at 304, 305. In any event, three men and a woman having a "heated discussion" is much different from what Appellant was doing. Officer Galbraith was aware that the Regency Oaks apartment had a reputation for hosting domestic violence situations. RR 7. And what he heard was not a mere disturbance – despite the presence of a building between himself and the fighting couple, he could clearly hear a man and woman "yelling and screaming." RR 9. Officer Galbraith believed that it was possible an

assault was taking place. *Id*. Thus, unlike the situation in *Gurolla*, Officer Galbraith reasonably suspected that an actual crime was happening and he was justified in investigating.[3]

But these distinctions merely highlight the bigger problem: that under an "as consistent with innocent activity as with criminal activity" construct, a police officer is not allowed to investigate what he believes is a possible domestic violence situation, a situation based on perceived facts (screaming, etc.) which he can articulate, in an apartment complex that the officer knows from past experience has been the scene of domestic violence. Fortunately, that test is no longer the law, and the Fort Worth Court was wrong to rely on a superficially similar case that employed that construct.

---

[3] *See also State v. Olson*, 729 N.W.2d 132, 135-36 (N.D. 2007) (officer reasonably detained defendant, who was running behind screaming woman; he could reasonably suspect a domestic assault situation); *State v. Madrigal*, 827 P.2d 1105, 1106-07 (Wash. Ct. App. 1992) (officer's detention of defendant was justified by the "loud altercation" he heard between defendant and his wife).

## CONCLUSION

The Fort Worth Court erroneously relied on implicitly overruled caselaw from this Court in finding that there was inadequate reasonable suspicion to detain Appellant. Under current law, Officer Galbraith was justified in detaining Appellant to investigate what reasonably sounded like a near-violent domestic dispute.

## PRAYER

The State prays that its petition be granted and that the Court of Appeals' judgment reversing the judgment of the trial court be reversed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

/s/ James Gibson_____
JAMES GIBSON, Assistant
Criminal District Attorney
State Bar No. 00787533
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAappellatealterts@tarrantcounty.com

14

## CERTIFICATE OF COMPLIANCE

The word count for the portions of the document covered by TEX. R. APP. P. 9.4(i)(1) is 2,589.

/s/ James Gibson_____
JAMES GIBSON

## CERTIFICATE OF SERVICE

Copies of the State's petition have been e-served to opposing counsel, the Hon. Maggie McBride, maggiemcbride@charter.net, 2000 Carson St., Fort Worth, Texas 76117, and to Hon. Lisa McMinn, State's Attorney, information@spa.texas.gov, P.O. Box 13046, Capitol Station, Austin, Texas 78711 on May 20, 2015.

/s/ James Gibson_____
JAMES GIBSON

H:\GIBSON.G17\BRIEFS\Pinkston St Pdr.docx

2015 WL 1262919
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH TEX.R.APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

Dezmone Pinkston, Appellant

v.

The State of Texas, State

NO. 02–14–00041–CR    |
DELIVERED: March 19, 2015

FROM CRIMINAL DISTRICT COURT NO. 3 OF
TARRANT COUNTY, TRIAL COURT NO. 1329761D.
JERRY W. WOODCOCH, JUDGE

**Attorneys and Law Firms**

Maggie McBride Fort Worth, Texas, Attorney for Appellant

Sharen Wilson, Criminal District Attorney; Debra Windsor,
Chief of Post–Conviction; James Gibson, James Luster,
Assistant Criminal District Attorneys; Tarrant County
Criminal District Attorney's Office Fort Worth, Texas,
Attorney for State

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

**MEMORANDUM OPINION** [1]

1     *See* Tex.R.App. P. 47.4.

BILL MEIER, JUSTICE

### I. INTRODUCTION

**\*1**  In two issues, appellant Dezmone Pinkston appeals his
conviction for possession of cocaine in an amount of less
than one gram. *See* Tex. Health & Safety Code Ann. §
481.115(b) (West 2010). Because we hold that the trial court
erred by denying Pinkston's motion to suppress, we reverse
the trial court's judgment and remand the cause for further
proceedings consistent with this opinion.

### II. BACKGROUND

After the State charged Pinkston with possession of cocaine,
he filed a motion to suppress. At the suppression hearing,
the State stipulated that the officers in this case did not have
a warrant to arrest or detain Pinkston prior to searching his
person and discovering cocaine.

Fort Worth Police Officer Barrett Galbraith testified that on
June 7, 2013, he and fellow officers conducted a walk-through
of the Regency Oaks Apartments, an area that, according
to Galbraith, is "very problematic" and known as an area
where "violent crimes [and] narcotics crimes" occur with
frequency. Galbraith also said that the area is known as a place
where domestic and violent family crimes occur. Galbraith
did not state at what time he and fellow officers conducted
their walk-through, but he did testify that his shift that night
was from 8:00 p.m. until 6:00 a.m. and that his encounter
with Pinkston occurred while it was "dark"; and the parties'
agreed-to proposed findings of fact and conclusions of law
reflect that Galbraith's encounter with Pinkston occurred "at
approximately midnight." There is, however, no evidence
that the trial court adopted these proposed findings and
conclusions.

By Galbraith's account, he and fellow officers had been at the
apartment complex for more than twenty minutes and most of
the people around had begun to "go inside because they saw
[the police] walking around" when he heard "arguing ... to
the north" of his location. Galbraith testified that although he
could not see who was arguing, the arguing was loud enough
that he could hear it despite the location of the argument
occurring a building over from where he was. Galbraith said
that in his report from that night he described the argument as
"yelling and screaming." According to Galbraith, the tenor of
the argument led him to believe that he needed to investigate
"an assault [or] something of that nature." He also described
the argument as being consistent with "a domestic assault."
Galbraith averred that as he approached the area where the
argument was occurring, he witnessed Pinkston and a female
arguing but that once the couple saw him, "they stopped
arguing and began to walk away."

Galbraith said that the couple's conduct of ceasing their
argument and walking away led him to believe that "they

were trying to get away from [him] so that they didn't have to talk to [him].” Galbraith stated to the couple that they should come back and talk to him, but as the couple continued their retreat, Galbraith declared, “Stop, police.” At that moment, the female stopped, but Pinkston continued walking away. From there, Galbraith and his fellow officers chased down Pinkston and arrested him for “[e]vading arrest or detention.” After patting down Pinkston, Galbraith found “an off white rock-like substance” on Pinkston's person that Galbraith believed to be crack cocaine.

**\*2** The trial court denied Pinkston's suppression motion, and he later entered into a plea bargain with the State whereby he pleaded guilty to possession of less than one gram of cocaine. The State recommended sixty days' jail time. The trial court entered judgment accordingly, and this appeal followed.

### III. DISCUSSION

In two issues, citing both state and federal principles of search and seizure, Pinkston argues that the trial court abused its discretion by denying his motion to suppress because Galbraith lacked reasonable suspicion to detain him at the moment Galbraith announced, “Stop, police.” In support of his position, Pinkston cites the court of criminal appeals's decision in *Gurrola v. State* 877 S.W.2d 300, 303 (Tex.Crim.App.1994). The State argues that this case is distinguishable from *Gurrola.* Furthermore, the State argues that *Gurrola* “seems to be simply outdated” as a touchstone for determining reasonable suspicion. We agree with Pinkston.

#### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex.App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex.Crim.App.2007); *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex.Crim.App.2006). Therefore, we give almost total

deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex.Crim.App.2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex.Crim.App.2005); *Johnson,* 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006).

#### B. No Reasonable Suspicion to Detain Pinkston

The Fourth Amendment, and its corresponding state principles codified in the Texas Code of Criminal Procedure, protects against evidence being used at trial when it was obtained through unreasonable searches and seizures by government officials. U.S. Const. amend. IV; Tex.Code Crim. Proc. Ann. art. 38.23 (West 2005); *Wiede,* 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador,* 221 S.W.3d at 672; *see Young v. State,* 283 S.W.3d 854, 872 (Tex.Crim.App.), *cert. denied,* 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador,* 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005); *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App.2005).

**\*3** A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880 (1968); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is

violating the law. *Crain v. State,* 315 S.W.3d 43, 52 (Tex.Crim.App.2010); *Ford,* 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford,* 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the detention exists. *Id.*

Here, the circumstances that Galbraith testified about that gave him reasonable suspicion to detain Pinkston were that Pinkston's argument with his female companion was of such volume and nature that he believed that "a possible offense" in the nature of an "assault" was transpiring. Galbraith also testified that this argument occurred in an area known for domestic violence and that this all transpired while it was "dark" outside. And, according to Galbraith's testimony, because Pinkston and the female stopped arguing and began to walk away upon seeing the police, the totality of this conduct provided him with reasonable suspicion that a crime had been committed.

We agree with Pinkston that the Court's decision in *Gurrola* is instructive in this case. 877 S.W.2d at 304. In *Gurrola,* during the afternoon, an unknown man reported to a patrol officer that there was a disturbance at a nearby apartment complex. *Id.* at 301. The officer knew the apartment complex to be "an unsafe location that had incurred several complaints of disturbances from area residents." *Id.* The officer drove over to the parking lot of the complex and saw three men and a woman engaged in what appeared to be an argument. *Id.* The officer approached the individuals to find out "what was going on," but as he did so, they all began to leave. *Id.* After the individuals began to disperse, the officer ordered them to stop and the officer then conducted a pat-down search and discovered cocaine on Gurrola's person. *Id.* The Court held that the officer lacked reasonable suspicion to detain Gurrola even though the officer had received an uncorroborated complaint of a disturbance; the argument the officer witnessed occurred in a "high-crime" area; and the individuals involved in the argument dispersed upon seeing the officer. *Id.* at 303, 305.

Here, Galbraith lacked even more articulable facts than the officer in *Gurrola.* In this case, like in *Gurrola,* the argument Galbraith witnessed occurred in a high-crime area and the

participants of the argument dispersed upon seeing the police. But unlike in *Gurrola,* the officers in this case had not received an uncorroborated complaint of a disturbance. The only distinction that this court can detect that differs in this case from *Gurrola* is that in *Gurrola* the argument occurred during the day, and in this case, the argument occurred while it was "dark." But time of night alone is not sufficient to rise to the level of reasonable suspicion. *See Crain,* 315 S.W.3d at 53 ("Neither time of day nor level of criminal activity in an area are suspicious in and of themselves.").

Furthermore, we are unpersuaded by the State's argument that *Gurrola* is no longer good law. First, it is not this court's prerogative to refuse to follow the court of criminal appeals's decisions. *See Wiley v. State,* 112 S.W.3d 173, 175 (Tex.App.—Fort Worth 2003, pet. ref'd) ("It is axiomatic that a Court of Appeals has no power to 'overrule or circumvent [the] decisions, or disobey [the] mandates,' of the Court of Criminal Appeals."). Moreover, the court of criminal appeals has recently cited *Gurrola* in its analysis of what constitutes reasonable suspicion to detain an individual. *Crain,* 315 S.W.3d at 49, n.16. *Cram* is also instructive to this case. In *Crain,* the Court held that an officer lacked reasonable suspicion to detain Crain even though Crain was walking at night in a residential area known for night-time burglaries and Crain had exhibited the "suspicious" conduct of "grabb[ing] at his waist" upon seeing a police officer. *Id.* at 53. Like in *Crain,* in this case, the circumstances of an argument at night in an area known for crime coupled with Pinkston's constitutional right to walk away from police also do not rise to the level of reasonable suspicion. *See Zone v. State,* 84 S.W.3d 733, 738–39 (Tex.App.—Houston [1st Dist.] 2002), *aff'd,* 118 S.W.3d 776 (Tex.Crim.App.2003) ("An individual has the right to refuse to answer a police officer's questions and walk away unless the officer has reasonable suspicion to detain that person."). We hold that Galbraith lacked reasonable suspicion to detain Pinkston. Thus, we hold that the trial court erred by denying Pinkston's motion to suppress the evidence found on his person after Galbraith detained him, and we sustain both of Pinkston's issues on appeal.

**C. Was the Denial of Pinkston's Motion to Suppress Harmful?**

**\*4** Galbraith's unlawful stop of Pinkston violated his Fourth Amendment rights, and thus the cocaine discovered from that detention should have been suppressed. Because the trial court committed constitutional error by denying Pinkston's motion to suppress, we must reverse his conviction

unless we determine beyond a reasonable doubt that the error did not contribute to his conviction. *See* Tex.R.App. P. 44.2(a). We hold that the trial court's denial of Pinkston's motion to suppress was harmful error because it "undoubtedly contributed in some measure to the State's leverage in the plea bargaining process and may well have contributed to [Pinkston's] decision to relinquish [his] constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation." *See Castleberry v. State,* 100 S.W.3d 400, 404 (Tex.App.—San Antonio 2002, no pet.) (*citing McKenna v. State,* 780 S.W.2d 797, 799 (Tex.Crim.App.1989)). Indeed, the cocaine found on Pinkston during Galbraith's illegal detention is the only evidence that Pinkston possessed cocaine.

## IV. CONCLUSION

Having sustained both of Pinkston's issues on appeal, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Print this page

# Case # PD-0444-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/20/2015 04:02:58 PM |
| Case Number | PD-0444-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | James Gibson |
| Firm Name | Tarrant County Criminal District Attorney |
| Filed By | Barbara Brennan |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Waiver Account |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | PD-0444-15, 02-14-00041-CR, Dezmone Pinkston, St's PDR.pdf |
| Reference Number | PD-0444-15, 02-14-00041-CR, Dezmone Pinkston, St's PDR.pdf |
| Comments | PD-0444-15, 02-14-00041-CR, Cause No. 1329761D, Dezmone Pinkston, St's PDR.pdf |
| Courtesy Copies | RCatalano@TarrantCounty.com, TDBurks@tarrantcountytx.gov, CJimGibson@tarrantcountytx.gov, bbrennan@tarrantcounty.com |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |

Envelope Details

| Service Fee | | $0.00 |
|---|---|---|

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 05/22/2015 10:55:02 AM | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | Pinkston St Pdr.pdf | [Original] |
| *Attachments* | Pinkston v State.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Lisa McMinn information@spa.texas.gov | | EServe | Sent | Yes | 05/20/2015 04:51:24 PM |
| Maggie McBride maggiemcbride@charter.net | | EServe | Sent | Yes | 05/21/2015 02:28:42 AM |